IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**Sealed**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | SEALED |
| | § | |
| v. | § | NO. 4:11CR79 |
| | § | Judge Crone |
| TERRA TORREL EVANS (1) | § | |
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | § | |
| MARTA HERRERA (3) | § | |
| EDGAR HERNANDEZ (4) | § | **FILED** |
|   a.k.a. "Primo" "El Sobrino" | § | U.S. DISTRICT COURT |
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | § | EASTERN DISTRICT OF TEXAS |
| | § | SEP 15 2011 |
| JOSE ODILON RAMIREZ-PERALES (7) | § | DAVID J. MALAND, CLERK |
|   a.k.a. "El Cuno" "Kuno" | § | BY |
| CELSO MARTINEZ (8) | § | DEPUTY _____ |
|   a.k.a. "El Celso" | § | |
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | § | |
| LUCIO HERNANDEZ-LECHUGA (10) | § | |
|   a.k.a. "Z100" "El Cien" "El Luky" | § | |
|   "El Lucky" | § | |
| FRANCISCO HERNANDEZ-GARCIA (11) | § | |
|   a.k.a. "El 2000" "El Panchillo" "Pancho" | § | |
|   "Huevotes" | § | |
| FREDERICK WAYNE ANDERSON (12) | § | |
| MARCOS ANTONIO GALARZA- | § | |
| RODRIGUEZ (13) | § | |
|   a.k.a. "El Gallo" | § | |
| GERARDO MATA-MORALES (14) | § | |
| HUGO CESAR ROMAN- | § | |
| CHAVARRIA (15) | § | |
|   a.k.a. "El Vecino" | § | |
| CESAR ESQUIVEL, JR. (16) | § | |
|   a.k.a. "Hughie" | § | |
| FEDERICO GONZALEZ, JR. (17) | § | |
| HERIBERTO FRANCO (18) | § | |
|   a.k.a. "La Papa" | § | |

**FIRST SUPERSEDING INDICTMENT/NOTICE OF PENALTY - Page 1**

# FIRST SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

## Count One

> Violation: 21 U.S.C. § 846
> (Conspiracy to Possess with Intent to Distribute Cocaine)

That from sometime in or about January 2007, and continuously thereafter up to and including September 14, 2011, in the Eastern District of Texas and elsewhere,

**Terra Torrel Evans**

**Marta Herrera**
**Edgar Hernandez, a.k.a. "Primo" "El Sobrino"**

**Jose Odilon Ramirez-Perales, a.k.a. "El Cuno" "Kuno"**
**Celso Martinez, a.k.a. "El Celso"**

**Lucio Hernandez-Lechuga, a.k.a. "Z100" "El Cien" "El Luky" "El Lucky"**
**Francisco Hernandez-Garcia, a.k.a. "El 2000" "El Panchillo" "Pancho" "Huevotes"**
**Frederick Wayne Anderson**
**Marcos Antonio Galarza-Rodriguez, a.k.a. "El Gallo"**
**Gerardo Mata-Morales**
**Hugo Cesar Roman-Chavarria, a.k.a. "El Vecino"**
**Cesar Esquivel, Jr., a.k.a. "Hughie"**
**Federico Gonzalez, Jr.**
**Heriberto Franco, a.k.a. "La Papa"**

defendants, did knowingly and intentionally combine, conspire, and agree with each other and other persons known and unknown to the United States Grand Jury, to knowingly and intentionally possess with the intent to distribute 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a violation of 21 U.S.C. § 841(a)(1).

In violation of 21 U.S.C. § 846.

### Count Two

> Violation: 18 U.S.C. §§ 1956(h) (Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A) and 1956(a)(2)(B(i))

That from in or about January 2007, the exact date being unknown to the Grand Jury, and continuously thereafter up to and including in or about April 13, 2011, in the Eastern District of Texas and elsewhere,

**Terra Torrel Evans**

**Marta Herrera**
**Edgar Hernandez, a.k.a. "Primo" "El Sobrino"**

**Jose Odilon Ramirez-Perales, a.k.a. "El Cuno" "Kuno"**
**Celso Martinez, a.k.a. "El Celso"**

**Lucio Hernandez-Lechuga, a.k.a. "Z100" "El Cien" "El Luky" "El Lucky"**
**Francisco Hernandez-Garcia, a.k.a. "El 2000" "El Panchillo" "Pancho" "Huevotes"**
**Frederick Wayne Anderson**
**Marcos Antonio Galarza-Rodriguez, a.k.a. "El Gallo"**
**Gerardo Mata-Morales**
**Hugo Cesar Roman-Chavarria, a.k.a. "El Vecino"**
**Cesar Esquivel, Jr., a.k.a. "Hughie"**
**Federico Gonzalez, Jr.**
**Heriberto Franco, a.k.a. "La Papa"**

defendants, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, to-wit:

FIRST SUPERSEDING INDICTMENT/NOTICE OF PENALTY - Page 3

1. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce that involved the proceeds of a specified unlawful activity, that is, Conspiracy to Possess with the Intent to Distribute a Controlled Substance, to-wit: cocaine, as described in Count One of this Indictment, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i);

2. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce that involved the proceeds of a specified unlawful activity, that is, Conspiracy to Possess with Intent to Distribute a Controlled Substance, to-wit: cocaine, as described in Count One of this Indictment, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

3. to knowingly transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place

outside the United States, with intent to promote the carrying on of specified unlawful activity, that is, Conspiracy to Possess with the Intent to Distribute a Controlled Substance, to-wit: cocaine, as described in Count One of this Indictment, in violation of 18 U.S.C. § 1956(a)(2)(A); and

4. to knowingly transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States, or to a place in the United States from or through a place outside the United States, involving the proceeds of a specified unlawful activity, that is, Conspiracy to Possess with the Intent to Distribute a Controlled Substance, to-wit: cocaine, as described in Count One of this Indictment, knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i);

## MANNER AND MEANS

1. It was part of the conspiracy for members to purchase automobiles, houses, jewelry and other valuable assets with the proceeds derived from the distribution and sale of cocaine and place the assets in the names of third parties in order to conceal or disguise the nature, location, source, ownership, and control of the proceeds derived from the

specified unlawful activity;

2. It was a part of the conspiracy for members to transport from the United States to the Republic of Mexico, United States currency that was derived from the smuggling of marijuana and cocaine into the United States and the distribution and sale of cocaine within in the United States, in order to promote the carrying on of the specified unlawful activity;

3. It was further a part of the conspiracy for members to receive United States currency derived from the distribution and sale of cocaine, and transport, transmit, or transfer the illegal proceeds from the United States to the Republic of Mexico, for the purpose of paying for the cocaine that this organization had received.

4. As representative of the manner and means of the conspiracy, and to effect and accomplish the objects of the conspiracy, one or more of the defendants or conspirators, both indicted and unindicted, and other persons known and unknown to the Grand Jury, performed or caused the performance of the following acts in the Eastern District of Texas and elsewhere, including but not limited to the following:

   a.   On or about December 17, 2010 a co-conspirator known to the grand jury attempted to transport approximately $630,719.00 in U.S. currency to Mexico. Some of the currency was received from **Edgar Hernandez, a.k.a. "Primo" "El Sobrino"** from the sale of illegal drugs.

   b.   On or about January 12, 2011, Sergio Alejandro Castaneda-Correa, a.k.a.

"Chico" delivered approximately $226,015.00 to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for transportation back to criminal associates in Mexico.

c. On or about January 12, 2011, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ received approximately $226,015.00 from Sergio Alejandro Castaneda-Correa, a.k.a. "Chico" for transportation back to criminal associates in Mexico.

d. In or about January of 2010, conspirators known to the grand jury possessed approximately 102 kilograms of cocaine and 515 pounds of marijuana in Dallas, Texas.

e. In or about October of 2010, two co-conspirators possessed approximately 287 kilograms of cocaine, 14 pounds of methamphetamine, 95 pounds of marijuana, 5 pounds of crack cocaine and approximately $412,000.00 in Mesquite, Texas. The cocaine was delivered from this location to Plano, Texas in the Eastern District of Texas. The currency was being prepared for transportation back to Mexico.

f. In or about October of 2010, a co-conspirator known to the grand jury possessed approximately $802,000.00 in Hillsboro, Texas concealed in a secret compartment within a vehicle. The currency was being transported from associates in the Dallas, Texas area to associates in Mexico.

g. In or about November of 2010, three co-conspirators known to the grand jury possessed 5 kilograms of cocaine and approximately $557,000.00 in Rowlett, Texas. The cocaine and bulk currency was being prepared for transportation back to Mexico.

h. In or about December of 2010, a co-conspirator known to the grand jury

possessed approximately 232 kilograms of cocaine in Dallas, Texas after the cocaine had been picked up in Lewisville, Texas.

i. In or about January of 2011, a co-conspirator known to the grand jury possessed $324,063.25 in United States currency in Dallas, Texas. Bulk currency was being prepared for transportation back to Mexico.

j. In or about February of 2011, a co-conspirator known to the grand jury possessed approximately $370,000.00 worth of jewelry and $50,213.00 in two safety deposit boxes in Rowlett, Texas. The currency and jewelry belonged to associates of the drug trafficking organization and represented proceeds of the illegal activity.

k. In or about February of 2011, a co-conspirator known to the grand jury possessed approximately $279,900.00 in Dallas, Texas. The currency belonged to this organization and was proceeds from the sale of illegal drugs.

l. In or about March of 2011, a co-conspirator known to the grand jury possessed approximately $500,000.00 in Mesquite, Texas which was proceeds from the sale of illegal drugs.

m. In or about 2011 **Terra Torrel Evans** distributed hundreds of kilograms of cocaine and transported drug proceeds in order to purchase multiple kilograms of cocaine.

n. On or about March 20, 2011 **Terra Torrel Evans** possessed approximately $1.7 million in United States Currency concealed in four bags in the rear of the vehicle.

o. In or about January of 2011, **Marco Antonio Galarza-Rodriguez, a.k.a.**

"**El Gallo**" delivered approximately $226,015.00 to a co-conspirator known to the grand jury for transportation to criminal associates in Mexico.

p.   In or about October 13, 2010, **Cesar Esquivel, Jr., a.k.a. "Hughie"** and **Federico Gonzalez, Jr.** possessed approximately 707 pounds of marijuana in Fort Worth, Texas.  **Cesar Esquivel, Jr., a.k.a. "Hughie"** and **Federico Gonzalez, Jr.** intended to sell the marijuana and give the proceeds of the sale of the marijuana to **Edgar Hernandez, a.k.a. "Primo""El Sobrino"** for shipment back to Mexico.

q.   During the term of the conspiracy, **Gerardo Mata-Morales** transported large quantities of currency which were proceeds from the sale of illegal drugs from Dallas, Texas to the Republic of Mexico.  Some of the currency transported by **Gerardo Mata-Morales** was delivered to **Heriberto Franco, "La Papa"** in Eagle Pass, Texas.

All in violation of 18 U.S.C. §§ 1956(h).

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE
Criminal Forfeiture Pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853

As a result of committing the offenses charged in this Indictment, the defendants herein may have used or intended to use, property to commit or facilitate the offenses and/or property derived from proceeds obtained directly or indirectly as a result of the commission of the violations of 18 U.S.C. §§ 1956(h) and 21 U.S.C. § 846, including but not limited to the following:

**REAL PROPERTY**

1.   All that lot or parcel of land, together with buildings, improvements, fixtures,

FIRST SUPERSEDING INDICTMENT/NOTICE OF PENALTY - Page 9

attachments and easements located at 9211 Larchwood, Dallas, Texas 75238 being the same property more fully described as follows: Lot 13, in Block B/7317, of Twelfth Installment of Lake Highlands Estates, an Addition to the City of Dallas, Dallas County, Texas, According to the Map Thereof Recorded in Volume 22, Page 141, of the Map Records of Dallas County, Texas. Ratified by Instrument Recorded in Volume 4158, Page 285, Deed Records of Dallas County, Texas;

2.   All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 11319 Patti, Balch Springs, Texas 75180 being the same property more fully described as follows: Lot 3, of Morton-Gonsior Addition, an addition to the City of Balch Springs, Dallas County, Texas, according to the plat thereof recorded in Volume 30, Page 223, Map Records, Dallas County, Texas;

3.   All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 3008 Sherry Lane, Balch Springs, Texas 75180 being the same property more fully described as follows: Being out of the Joseph Langley Survey, abstract No 803, and being part at the prperty conveyed to T. E. Frossard in two tracts by John S. Lawrence and wife, in Volume 4057, Page. 59 (said deed being refiled in Volume 4126, Page 379) Deed Records of Dallas County, Texas, the tract herein conveyed being described as follows:

BEGINNING at a point in the East line of Sherry Lane, said point being West 1241.5 feet along the East line of Quail Drive and North 0 deg. 10 min. West 1096 feet along the East line of Sherry Lane, from the Southeast corner of the Joseph Langley Survey, Abstract No. 8803;

THENCE North 0 deg. 10 min. West 120 feet to point for corner;

THENCE East 136.2 feet to point for corner;

THENCE South 0 deg. 30 min.. West 120 feet to point for corner;

THENCE West 134.73 feet to point of beginning, and being known as the South 105 feet of Lot 10 and the North 15 feet of Lot 9, Block 2 of T.E. Fossards Unrecorded Addition, as revised.

4.   All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 304 Slaughter Avenue, Dallas, Texas 75214 being the same property more fully described as follows: Being Lot 11-A, in Block

E/1669 of Junius Heights No. 2 and being a part of Davis Resubdivision of Lots 11 and 12, Block E/1669 of Junius Heights No. 2, an Addition to the City of Dallas, Dallas County, Texas, according to the plat thereof recorded in Volume 13, Page 175, of the Map Records of Dallas County, Texas;

5. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 6342 Belmont Avenue, Dallas, Texas 75214 being the same property more fully described as follows: Being Lot 31, in Block 1/2078, of Lakewood Heights, an Addition to the City of Dallas, Dallas County, Texas, according to the Map thereof recorded in Volume 1, Page 518, of the Map Records of Dallas County, Texas;

6. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 2405 West Serene Avenue Unit 601, Las Vegas, Nevada 89123 being the same property more fully described as follows:

Parcel I: - Unit:

Unit 601 ("Unit") in Building 4 ("Building") as Shown on the Final Plat of Palm Beach Resort, filed in Book 128 of Plats, Page 61, in the Official Records of the County Recorder, Clark County, Nevada ("Plat"), and Amended by Certificate of Amendment Recorded February 3, 2006 in Book 20060203 as Document No. 03047, and Further Amended by Certificate of Amendment Recorded April 12, 2007 in Book 20070412 as Document No. 04337, and as Defined and Set Forth in that Certain Declaration of Covenants, Conditions and Restrictions for Boca Raton Condominiums, Recorded February 22, 2007 as Instrument No. 20070222 in Book 05515, Official Records, Clark County, Nevada ("Palm Beach Resort Declaration").

Parcel II: - Common Elements:

An Undivided Allocated Fractional Interest as Tenant-In-Common in and to the Common Elements, as Defined in and Subject to the Declaration.

Excepting Therefore, All Units Shown on the Plat. Reserving Therefrom, the Right to Use any of Those Areas Designated as Limited Common Elements in the Plat and/or the Declaration.

Further Reserving Therefrom, for the Benefit of the Owners of All Units Shown on the Plat (Except the Unit Referred to in Parcel I Above) Non-exclusive

Easements for Access, Ingress, Egress Use, Enjoyment and Other Purposes on, Over and Across the Common Elements as Defined in and Subject to the Declaration.

Parcel III: - Limited Common Elements:

The Exclusive Right to Use, Possess and Occupy the Following, Subject to the Terms and Provisions of the Declaration:

Parking Space Number: GE241 as Shown on the Plat

All of Which Are Described as Limited Common Elements in Section 5.2(A) and Section 5.3(A) of the Declaration and Which are Appurtenant to Parcel I and Parcel II Described Above.

Together with the Areas Designated as Limited Common Elements Defined and Described as Limited Common Elements, Allocated to Parcel I and Parcel II in the Declaration

Parcel IV - Appurtenant Easements:

Non-Exclusive Easements for Access, Ingress and Egress Use, Enjoyment and Other Purposes on, Over and Across the Common Elements as Defined in and Subject to the Declaration, Which Easements are Appurtenant to Parcels I, II and III Above.

7. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 2405 West Serene Avenue Unit 732, Las Vegas, Nevada 89123 being the same property more fully described as follows:

Parcel I: - Unit:

Unit 732 ("Unit") in Building 4 ("Building") as Shown on the Final Plat of Palm Beach Resort, filed in Book 128 of Plats, Page 61, in the Official Records of the County Recorder, Clark County, Nevada ("Plat"), and Amended by Certificate of Amendment Recorded February 3, 2006 in Book 20060203 as Document No. 03047, and Further Amended by Certificate of Amendment Recorded April 12, 2007 in Book 20070412 as Document No. 04337, and as Defined and Set Forth in that Certain Declaration of Covenants, Conditions and Restrictions for Boca Raton Condominiums, Recorded February 22, 2007 as Instrument No. 20070222 in Book

05515, Official Records, Clark County, Nevada ("Palm Beach Resort Declaration").

Parcel II: - Common Elements:

An Undivided Allocated Fractional Interest as Tenant-In-Common in and to the Common Elements, as Defined in and Subject to the Declaration.

Excepting Therefore, All Units Shown on the Plat. Reserving Therefrom, the Right to Use any of Those Areas Designated as Limited Common Elements in the Plat and/or the Declaration.

Further Reserving Therefrom, for the Benefit of the Owners of All Units Shown on the Plat (Except the Unit Referred to in Parcel I Above) Non-exclusive Easements for Access, Ingress, Egress Use, Enjoyment and Other Purposes on, Over and Across the Common Elements as Defined in and Subject to the Declaration.

Parcel III: - Limited Common Elements:

The Exclusive Right to Use, Possess and Occupy the Following, Subject to the Terms and Provisions of the Declaration:

Parking Space Number: GE011 as Shown on the Plat

All of Which Are Described as Limited Common Elements in Section 5.2(A) and Section 5.3(A) of the Declaration and Which are Appurtenant to Parcel I and Parcel II Described Above.

Together with the Areas Designated as Limited Common Elements Defined and Described as Limited Common Elements, Allocated to Parcel I and Parcel II in the Declaration

Parcel IV - Appurtenant Easements:

Non-Exclusive Easements for Access, Ingress and Egress Use, Enjoyment and Other Purposes on, Over and Across the Common Elements as Defined in and Subject to the Declaration, Which Easements are Appurtenant to Parcels I, II and III Above.

8. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 3737 Middlefield, Dallas, Texas 75253 being the same property more fully described as follows: 10.0504 Acres Out of the Artemus Baker Survey, Abstract No. 81, in the City of Dallas, Block 8559, Dallas County, Texas.

9. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 10524 Oakwood Drive, Dallas, Texas 75217 being the same property more fully described as follows: Haymarket Acres, Blk 8773, Pt Lts 25 & 26, ACS 0.563, 400ft FR Haymarket, VOL98129/9742 CO-DC, 8773 000 025 3DA8773 000.

10. All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located at 5108 Barbara Road, River Oaks, Texas 76114 being the same property more fully described as follows: Tract 7, of the Subdivision of Lot 15, Forest Acres Addition, First Filing to the City of Fort Worth, Tarrant County, Texas, According to Plat Recorded in Volume 1935, Page 431, Deed Records, Tarrant County, Texas.

**CURRENCY -**

11. $1,722,266.46 in U.S. currency seized from **Terra Torrel Evans**;

12. U.S. currency and/or coin, more or less, on deposit at Oak State Bank; Account Holder: **Terra Torrel Evans** and/or DMT Group, Inc., including but not limited to, Account Nos. XX978, XX297 and XX305;

13. U.S. currency and/or coin, more or less, on deposit at JPMorgan Chase; Account Holder: **Terra Torrel Evans** and/or DMT Group, Inc., including but not limited to, Account Nos. XX380 and XX898;

**JEWELRY -**

14. Miscellaneous jewelry seized from **Terra Torrel Evans** appraised at $655,624.00;

**CASH PROCEEDS -**

15. Approximately $5,000,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained directly or indirectly as a result of the commission of the aforesaid violations.

**SUBSTITUTE ASSETS** -

If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

By virtue of the commission of the offenses charged in this Indictment, any and all interest the defendants have in the above-described property is vested in and forfeited to the United States pursuant to 18 U.S.C. § 982 and 21 U.S.C. § 853.

A TRUE BILL

_____
GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

_____
ERNEST GONZALEZ
Assistant United States Attorney

9/14/11
Date

FIRST SUPERSEDING INDICTMENT/NOTICE OF PENALTY - Page 15

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | SEALED |
| | § | |
| v. | § | NO. 4:11CR79 |
| | § | Judge Crone |
| TERRA TORREL EVANS (1) | § | |
| ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ | § | |
| MARTA HERRERA (3) | § | |
| EDGAR HERNANDEZ (4) | § | |
|   a.k.a. "Primo" "El Sobrino" | § | |
| ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ | § | |
| JOSE ODILON RAMIREZ-PERALES (7) | § | |
|   a.k.a. "El Cuno" "Kuno" | § | |
| CELSO MARTINEZ (8) | § | |
|   a.k.a. "El Celso" | § | |
| ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ | § | |
| LUCIO HERNANDEZ-LECHUGA (10) | § | |
|   a.k.a. "Z100" "El Cien" "El Luky" "El Lucky" | § | |
| FRANCISCO HERNANDEZ-GARCIA (11) | § | |
|   a.k.a. "El 2000" "El Panchillo" "Pancho" "Huevotes" | § | |
| FREDERICK WAYNE ANDERSON (12) | § | |
| MARCOS ANTONIO GALARZA-RODRIGUEZ (13) | § | |
|   a.k.a. "El Gallo" | § | |
| GERARDO MATA-MORALES (14) | § | |
| HUGO CESAR ROMAN-CHAVARRIA (15) | § | |
|   a.k.a. "El Vecino" | § | |
| CESAR ESQUIVEL, JR. (16) | § | |
|   a.k.a. "Hughie" | § | |
| FEDERICO GONZALEZ, JR. (17) | § | |
| HERIBERTO FRANCO (18) | § | |
|   a.k.a. "La Papa" | § | |

**FIRST SUPERSEDING INDICTMENT/NOTICE OF PENALTY - Page 16**

# NOTICE OF PENALTY

## Count One

**Violation:** 21 U.S.C. § 846

**Penalty:** If 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine – not less than 10 years and not more than life imprisonment, a fine not to exceed $4 million, or both; supervised release of at least five (5) years;

If 500 grams or more but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine – not less than five (5) and not more than 40 years imprisonment, a fine not to exceed $2 million, or both; supervised release of at least four (4) years;

If less than 500 grams of a mixture or substance containing a detectable amount of cocaine – not more than 20 years imprisonment, a fine not to exceed $1 million, or both; supervised release of at least three (3) years.

**Special Assessment:** $100.00

## Count Two

**Violation:** 18 U.S.C. §§ 1956(h)

**Penalty:** Imprisonment for not more than twenty (20) years, a fine not to exceed $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, or both. A term of supervised release of at least three (3) years.

**Special Assessment:** $100.00